IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECTON, DICKINSON AND COMPANY; | ) | |
| CAREFUSION 303, INC.; | ) | |
| CAREFUSION MANUFACTURING, LLC; | ) | |
| CAREFUSION SOLUTIONS, LLC; and | ) | |
| BD SWITZERLAND S.À.R.L., | ) | C.A. No. _____ |
| | ) | |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| BAXTER INTERNATIONAL INC. and | ) | |
| BAXTER HEALTHCARE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT FOR PATENT INFRINGEMENT**

1.     This is an action for infringement of U.S. Patent Nos. 11,289,180 (the "'180 patent"), 11,901,058 (the "'058 patent"), 11,324,880 (the "'880 patent"), 12,278,868 (the "'868 patent"), 12,028,414 (the "'414 patent"), and 12,205,703 (the "'703 patent") (collectively, the "Asserted Patents"), arising under the patent laws of the United States, Title 35, United States Code § 100, et seq.  This action arises out of the infringing manufacture, use, importation, offer for sale, and/or sale by Defendants Baxter International Inc. and Baxter Healthcare Corporation (collectively, "Defendants" or "Baxter") of an infusion platform called "Novum IQ Infusion Platform."   Plaintiffs Becton, Dickinson and Company; CareFusion 303, Inc.; CareFusion Manufacturing, LLC; CareFusion Solutions, LLC; and BD Switzerland S.à.r.l. (collectively, "Plaintiffs" or "BD") bring this action to remedy widespread infringement of the Asserted Patents through Baxter's activities relating to the Novum IQ Infusion Platform.

2.     BD is one of the largest global medical technology companies in the world.  BD develops and sells innovative technology, services, and solutions that advance both clinical therapy

for patients and clinical process for health care providers.  For example, BD's infusion pumps are used to continuously or intermittently deliver fluids, medications, blood or blood products to adult, pediatric, or neonatal patients.[1]  BD's innovations improve safety and security standards for infusion delivery by accurately delivering infusions and simplifying workflows.

3.     For example, BD's Alaris™ Infusion System is the only modular and most comprehensive infusion system in the United States, including large volume pumps, syringe and patient-controlled analgesia ("PCA") pumps, respiratory monitoring, and dose-error reduction software.  The groundbreaking system together with interoperability, infusion sets, accessories, and fluids helps to mitigate risks across health professionals' infusion workflow by allowing them to efficiently manage infusion administration while reducing errors and helping protect patient infusions.  The Alaris™ Infusion System helps forward-thinking healthcare systems create automated workflows that can improve medication safety.  It is built to support smart infusion therapies across care settings and specialties, including, for example, oncology, pain management, critical care, intensive care unit, medical-surgical unit, outpatient, neonatal intensive care unit, and pediatric intensive care unit.

4.     BD's success is rooted in its scientific innovation and patient-focused research and development.  These efforts have resulted in the United States Patent Office granting BD dozens of patents on infusion pump technologies, including the Asserted Patents.  The Asserted Patents

---

[1] Infusion pumps are medical devices used to administer fluids, typically through an intravenous ("IV") line.  Infusion pumps typically come in one of several forms, including large-volume pumps ("LVP"), which are used to deliver large volumes of fluids, and syringe pumps, which are used to deliver smaller volumes.  For example, LVPs typically deliver fluids from large IV bags (e.g., 1000 mL bags) whereas syringe pumps deliver fluids from small syringes (e.g., 10 mL syringes).  Infusion pumps are typically used in hospitals or similar medical facilities that, in many cases, have electronic information systems to manage medication orders and/or electronic medical records ("EMR").

relate to groundbreaking infusion pump technologies designed to improve patient care, including through enhancing interoperability, integrating infusion pumps with electronic medical records systems, simplifying workflows, decreasing programming steps, reducing errors, and ensuring accurate delivery of infusions.  The Asserted Patents reflect BD's substantial innovation, investment, and leadership in the field of infusion solutions.  BD has a long history of advancing the field of infusion pumps and is committed to protecting its innovative intellectual property from infringers like Baxter that use BD's technology without permission.

5.      Baxter markets an infringing infusion platform called the "Novum IQ Infusion Platform," which includes multiple types of infusion pumps and software for monitoring and managing the infusion pumps (the "Novum IQ Infusion Platform").  Baxter's Novum IQ Infusion Platform, part of which is shown below, unlawfully uses BD's innovative, patented technology, by infringing the Asserted Patents:



6.      For example, Baxter's marketing materials for the Novum IQ Infusion Platform tout a number of core features including an "On-screen Barcode," "Over-the-Air Updates," a "Backlit Keypad & Ambient Light Sensor," and certain user interfaces:



7.  But Baxter did not invent any of those core features.  It was BD that invented and/or patented those features before Baxter's Novum IQ Infusion Platform was launched.

8.  Baxter's infringement of the Asserted Patents is willful, and if allowed to continue will stifle innovation within the medical technology industry.  Protecting BD's hard work, investment, and innovation—all of which the Asserted Patents reflect—is essential to upholding the standards of care for patients and ensuring continuous advancements in medical technology. Baxter's unlawful use of BD's patented innovations without permission in its infringing infusion platform, including the Novum IQ Infusion Platform, entitles BD to damages and injunctive relief.

## I.      PARTIES

### A.      Plaintiffs

9.  Becton, Dickinson and Company is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey, 07417-1880.

10.     CareFusion 303, Inc., CareFusion Manufacturing, LLC, and CareFusion Solutions, LLC are companies organized and existing under the laws of the State of Delaware, with their principal place of business at 3750 Torrey View Court, San Diego, California, 92130.

11.     BD Switzerland S.à.r.l. is a company organized and existing under the laws of Switzerland, with its principal place of business located at Terre Bonne Park-A4, Route de Crassier 17, 1262 Eysins, Switzerland.

**B.     Defendants**

12.     On information and belief, Baxter International Inc. and Baxter Healthcare Corporation are corporations organized and existing under the laws of the State of Delaware, with their principal place of business at One Baxter Parkway, Deerfield, Illinois, 60015.   Upon information and belief, Baxter Healthcare Corporation is a wholly owned subsidiary of Baxter International Inc.

## II.     NATURE OF THE ACTION

13.     This action arises under the patent laws of the United States, Title 35 of the United States Code, including 35 U.S.C. § 271.

14.     BD brings this action to seek relief for Baxter's infringement of the Asserted Patents.  True and correct copies of the Asserted Patents are attached hereto as Exhibits A–F.

## III.     JURISDICTION AND VENUE

15.     This action arises under the patent laws of the United States, Title 35 of the United States Code.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     The Court has personal jurisdiction over Baxter International Inc. and Baxter Healthcare Corporation because they are companies organized and existing under the laws of Delaware.

17.    Furthermore, on information and belief, Baxter International Inc. and Baxter Healthcare Corporation have purposely availed themselves of the rights and benefits of the laws of Delaware by engaging in persistent, systematic, and continuous contacts with Delaware. Among other things, Baxter International Inc. and Baxter Healthcare Corporation are in the business of marketing medical devices, which they distribute and sell throughout the United States, including in Delaware. This lawsuit arises out of Baxter International Inc.'s and Baxter Healthcare Corporation's infringing activity, including, without limitation, using, distributing, selling, offering to sell, and/or importing infringing products in Delaware and/or direct or indirect infringement in Delaware.

18.    Venue is proper in this Court under 28 U.S.C. 1400(b) because Baxter International Inc. and Baxter Healthcare Corporation are incorporated in Delaware.

## IV.    THE ASSERTED PATENTS

### A.    The '180 patent

19.    The '180 patent is entitled "Medical Device with Information Reader," and was duly and legally issued on March 29, 2022, by the United States Patent and Trademark Office. BD owns all right, title, and interest in and to the '180 patent. A true and correct copy of the '180 patent is attached as Exhibit A.

20.    The '180 patent relates to a novel infusion pump that integrates seamlessly into a medical environment by rendering a scannable tag on a display and, after an information reader scans both the scannable tag and a barcode on a medication, receiving the parameters needed to administer the medication in an infusion. The claimed solution enables the infusion pump to be programmed to administer the infusion using a single information reader that scans both the tag on the display of the pump and the barcode on the medication. Compared to existing solutions that used two barcode scanners—one attached to the pump and a separate EMR scanner—the

claimed approach uses less hardware and takes fewer steps to program. Moreover, by rendering the scannable tag on the pump's display, the claimed solution ensures the correct pump-barcode association and makes efficient use of the limited space on the face of the pump.

21. Claim 1 of the '180 patent recites:

1. An infusion pump for medication infusion within a medical environment, the infusion pump comprising:

a display;

at least one data processor; and

at least one memory including a computer program code, the at least one memory and the computer program code configured to, with the at least one data processor, cause the infusion pump to:

render a scannable tag on the display of the infusion pump, wherein the scannable tag is configured to be readable by an information reader and is configured to provide medical device information uniquely identifying the infusion pump after being scanned by the information reader; and

receive medication information about medication to be administered to a patient by the infusion pump, the medication information including at least one of an infusion parameter of the medication, a medication name, or a medication order identifier,

wherein the infusion pump is configured to receive the medication information after the information reader scans a medication barcode on the medication to be administered to the patient.

22. The '180 patent further relates to an infusion pump that, in addition to having the features described above, receives a request for communicative coupling from a server after scanning the scannable tag. A dialog is rendered on the pump's display to acknowledge the request. These connectivity features form the technological foundation for interoperability, e.g., integration of the infusion pump with the medical facility's EMR system, which has been transformative in expanding and improving the capabilities of infusion pumps in modern, data-centric healthcare environments.

23.     Claim 13 of the '180 patent recites:

13. The infusion pump of claim 1, wherein the at least one memory and the computer program code are further configured to, with the at least one data processor, cause the infusion pump to:

connect to a communication network;

receive, from a server connected to the communication network and after scanning of the scannable tag, a request for communicative coupling with the infusion pump; and

render, on the display, a dialog to acknowledge the request.

24.     The '180 patent further relates to an infusion pump that, in addition to having the features described above, provides a scannable tag that has routing information for routing medication information to the infusion pump. The routing information can include, for example, connectivity parameters or authentication information. These routing capabilities further enhance the infusion pump's ability to be interoperable with an EMR system, as explained above.

25.     Claims 8 and 9 of the '180 patent recite:

8. The infusion pump of claim 1, wherein the scannable tag further comprises routing information defining parameters for routing the medication information to the infusion pump.

9. The infusion pump of claim 8, wherein the routing information comprises at least one of: connectivity parameters of the infusion pump or authentication information of the infusion pump.

26.     The '180 patent further relates to an infusion pump that, in addition to having the features described above, administers parenteral infusions of at least 100 mL of fluid from a container. These capabilities, in conjunction with the ability to render a scannable tag and receive medication administration parameters, enable a pump that can be automatically programmed to deliver large volumes of fluid (e.g., medication, nutrients).

27.     Claims 15 the '180 patent recites:

15. The infusion pump of claim 1, wherein the at least one memory and the computer program code are further configured to, with the at least one data processor, cause the infusion pump to administer a parenteral infusion of at least 100 mL of fluid from a container.

**B.     The '058 patent**

28.     The '058 patent is entitled "Associating An Information Reader And A Medical Device," and was duly and legally issued on February 13, 2024, by the United States Patent and Trademark Office.  The '058 patent is in the same family as the '180 patent.  BD owns all right, title, and interest in and to the '058 patent.  A true and correct copy of the '058 patent is attached as Exhibit B.

29.     The '058 patent relates to a novel infusion pump that integrates seamlessly into a medical environment by rendering a barcode on a display, after a barcode reader scans both the pump's barcode and an infusion barcode on an infusion to be administered, receiving the infusion information needed to administer the infusion, and operating to cause administration of the infusion based on the received infusion information.  The claimed solution enables the infusion pump to be programmed to administer the infusion using a single information reader that scans both the tag on the display of the pump and the barcode on the medication.  Compared to existing solutions that used two barcode scanners—one attached to the pump and a separate EMR scanner—the claimed approach uses less hardware and takes fewer steps to program.  Moreover, by rendering the barcode on the pump's display, the claimed solution ensures the correct pump-barcode association and makes efficient use of the limited space on the face of the pump.

30.     Claim 1 of the '058 patent recites:

1. An infusion pump for infusion within a medical environment, the infusion pump comprising:

a display;

a wireless module configured to communicate with a wireless network;

at least one data processor; and

at least one memory including computer program code, the at least one memory and the computer program code configured to, with the at least one data processor, cause the infusion pump to at least:

render a barcode on the display of the infusion pump, wherein the barcode is configured to be scanned by a barcode reader;

configure the infusion pump for receiving infusion information;

receive, via the wireless module, infusion information about an infusion to be administered to a patient after the barcode reader scans the barcode on the display of the infusion pump and an infusion barcode on the infusion to be administered, the infusion information including at least one of an infusion parameter of the infusion to be administered, an infusion name, or an infusion order identifier; and

operate, based at least on the received infusion information, to cause administration of the infusion.

31.    The '058 patent further relates to an infusion pump that, in addition to having the features described above, provides a barcode that has routing information for routing infusion information to the infusion pump.  The routing information can include, for example, connectivity parameters or authentication information.  These routing capabilities further enhance the infusion pump's ability to be interoperable with an EMR system, as explained above.

32.    Claims 5 and 6 of the '058 patent recite:

5. The infusion pump of claim 1, wherein the barcode further comprises routing information defining parameters for routing the infusion information to the infusion pump.

6. The infusion pump of claim 5, wherein the routing information comprises at least one of: a connectivity parameter of the infusion pump or authentication information of the infusion pump.

### C.     The '880 patent

33.     The '880 patent is entitled "Infusion Monitoring System," and was duly and legally issued on May 10, 2022, by the United States Patent and Trademark Office.  BD owns all right, title, and interest in and to the '880 patent.  A true and correct copy of the '880 patent is attached as Exhibit C.

34.     The '880 patent relates to a novel infusion management and monitoring system that uses a remote device (e.g., a server) separate from and in communication with an infusion pump to display infusion information on a graphical user interface of a mobile communication device. The infusion pump and the mobile communication device are located within the same healthcare environment.  The claimed solution provides an efficient mechanism for offering processing-intensive data analytics within a healthcare environment, where hardware constraints limit the available computing resources (e.g., the infusion pump's processor) and display interfaces (e.g., the clinician's mobile device).  The claimed solution efficiently distributes computational workloads associated with infusion management and monitoring among the infusion pump, the remote device, and the mobile communication device.  For example, data processing is performed using the remote device, which frees up limited computational resources on the infusion pump, and the user interface is provided on the mobile communication device, which provides responsive, interactive drill-down capabilities to the clinician.

35.     The claimed solution also includes displaying an interactive timeline of infusion events and respective event times and parameters characterizing operation of the infusion pump in response to a user interaction with the timeline or the event times.  These features deliver important information to a healthcare provider in a format tailored for the healthcare environment, which decreases the time a health care provider needs to spend filtering and analyzing data and reduces error risks.

36.    Individually and collectively, these claimed features provide an innovative, efficient way to deliver actionable information to clinicians in a healthcare environment while navigating the hardware constraints associated with the healthcare environment.

37.    Claim 1 of the '880 patent recites:

1. An infusion management and monitoring system comprising:

an infusion pump; and

a non-transitory computer readable medium comprising instructions executable by a processor to cause a remote device separate from and in communication with the infusion pump to:

receive data for a medication to be administered to a patient via the infusion pump within a healthcare environment, the data for the medication comprising one or more of a medication name, a medication amount to be administered, or date or time data related to when the medication is scheduled to be administered;

receive from the infusion pump data for administration of the medication to the patient, the data for the administration of the medication comprising one or more of a patient identifier, a medication container identifier, a medication type, a rate of medication administration, an infusion pump identifier, or one or more infusion events and respective event times;

determine a status of the administration of the medication based on at least one of the data for the medication or the data for the administration of the medication; and

transmit the status to a mobile communication device within the healthcare environment, the transmitting causing the mobile communication device to: provide, on a graphical user interface, information about the administration of the medication, wherein the information is a timeline of the infusion events and the respective event times; and provide, on the graphical user interface and in response to a user interaction with the information, parameters characterizing operation of the infusion pump.

38.    The '880 patent further relates to an infusion management and monitoring system that, in addition to having the features described above, provides information from a plurality of infusion pumps on the graphical user interface. These features highlight the scalability of the

claimed solution – multiple infusion pumps can connect to the same remote device – which in turn augments the functionality of the claimed graphical user interface and interactive timeline.

39.     Claim 15 of the '880 patent recites:

> 15. The infusion management and monitoring system of claim 1, wherein information is from a plurality of infusion pumps, the plurality of infusion pumps including the infusion pump.

**D.     The '868 patent**

40.     The '868 patent is entitled "Remote Flashing During Infusion," and was duly and legally issued on April 15, 2025, by the United States Patent and Trademark Office.  BD owns all right, title, and interest in and to the '868 patent.  A true and correct copy of the '868 patent is attached as Exhibit D.

41.     The '868 patent relates to a novel infusion pump that wirelessly receives, from a remote server, configuration information that includes a parameter to control dose error reduction software and activates the configuration information during a clinically appropriate time to do so based on the state of the pump.  Using the claimed solution, an infusion pump wirelessly receives an update to configuration information at any time, but it determines and then waits for a clinically appropriate time to activate the update.  As a result, the remote server can deploy updates to infusion pumps across a hospital at the same time, even though a given pump may be in a clinically inappropriate state to activate the update at the time the update is deployed (e.g., in the middle of an infusion).

42.     Configuring the infusion pump to determine a clinically appropriate time to activate configuration information for dose error reduction software received from a remote server enables safe and efficient remote updating of infusion pumps at scale compared to existing approaches. For example, activating an update to configuration information for dose error reduction software without waiting for a clinically appropriate time creates a risk of unintentionally interrupting an

ongoing infusion or causing unexpected changes in dosage or rate, with potentially dangerous consequences to the patient. To mitigate this risk, existing approaches to updating infusion pumps involved removing infusion pumps from service one-by-one, or in small batches, and moving them to a maintenance area of the medical facility (e.g., a basement) so there was no risk of activating an update when a pump was in a clinically inappropriate state. But these approaches were inefficient, error-prone, and created other risks, such as infusion pumps using outdated configuration parameters with patients if they fell toward the end of a given update cycle.

43.     The claimed solution addresses these problems because a remote server wirelessly delivers updates for configuration parameters for dose error reduction software to infusion pumps, and the individual pumps independently and autonomously decide when to activate the updates based on their respective states to ensure that the update "does not interfere with patient treatment." '868 patent, 11:60-61. Using the claimed solution, a remote server deploys updates for configuration parameters for dose error reduction software to a fleet of infusion pumps at the same time, without removing the pumps from service, and without risk that the updates are activated at a clinically inappropriate time. For example, the specification discloses and the claims recite that the infusion pump, when identifying a state of the infusion pump, may determine that the infusion pump state is after receiving a power-up command for the infusion pump, or is after receiving a power-down command for the infusion pump. These features emphasize the autonomy of individual infusion pumps to activate the update at a clinically appropriate time relative to their internal operation, irrespective of when the update is received.

44.     Claim 1 of the '868 patent recites:

1. An infusion pump comprising:

at least one data processor; and

at least one memory including computer program code, the at least one memory and the computer program code configured to, with the at least one data processor, cause the infusion pump to:

receive, over a wireless communication channel and from the remote server, configuration information for the infusion pump, the configuration information comprising at least one parameter to control dose error reduction software for the infusion pump;

identify a state of the infusion pump, wherein the state includes at least one of prior to administering the infusion to the patient, while administering the infusion to the patient, after administering the infusion to the patient, after receiving a power-up command for the infusion pump, or after receiving a power-down command for the infusion pump;

determine a clinically appropriate time for the infusion pump to activate the configuration information received over the wireless communication channel and from the remote server, based on the identified state of the infusion pump; and

during the clinically appropriate time for the infusion pump to activate the configuration information, activate the configuration information such that the dose error reduction software of the infusion pump operates based on the at least one parameter.

45.    The '868 patent further relates to an infusion pump that, in addition to having the features described above, may receive the configuration information for the infusion pump while an infusion is being administered. These features emphasize the flexibility of the infusion pump to operate efficiently through automatic update distribution by making an independent determination about when to activate the updates to ensure that updates are activated at a clinically appropriate time relative to their internal operation, irrespective of when the update is received.

46.    Claim 24 of the '868 patent recites:

24. The infusion pump of claim 1, wherein the at least one memory and the computer program code are further configured to, with the at least one data processor, cause the infusion pump to: while the infusion pump is administering the infusion to the patient, receive the configuration information for the infusion pump.

15

### E.    The '414 patent

47.    The '414 patent is entitled "Remote Flashing During Infusion," and was duly and legally issued on July 2, 2024, by the United States Patent and Trademark Office.  The '414 patent is in the same family as the '868 patent.  BD owns all right, title, and interest in and to the '414 patent.  A true and correct copy of the '414 patent is attached as Exhibit E.

48.    The '414 patent relates to a novel infusion pump that wirelessly receives configuration information from a remote server and activates the configuration information after determining a clinically appropriate time to do so based on the state of the pump, as described above for the '868 patent.  In addition to these features, the '414 patent describes that the configuration information includes a parameter that is used to control a predetermined infusion by the infusion pump.  Using the claimed solution, a remote server can update the parameters that control a predetermined infusion without risk that the update is activated at a clinically inappropriate time.

49.    Claim 1 of the '414 patent recites:

1. An infusion pump comprising:

a data processor; and

non-transitory memory storing computer-readable instructions that, when executed by the processor, cause the infusion pump to:

receive, via a wireless communication interface and from a remote server, configuration information for the infusion pump, the configuration information comprising medication administration information indicating a parameter to control a predetermined infusion by the infusion pump;

identify a state of the infusion pump as being prior to administering the infusion to the patient, while administering the infusion to the patient, or after administering the infusion to the patient;

determine a clinically appropriate time for the infusion pump to activate the received configuration information, based on the

16

identified state of the infusion pump being at least one of prior to administering the infusion to the patient, while administering the infusion to the patient, or after administering the infusion to the patient; and

after determining the clinically appropriate time for the infusion pump to activate the configuration information, activate the configuration information such that the infusion pump is configured to operate based on the configuration information.

50.     The '414 patent further relates to an infusion pump that, in addition to having the features described above, determines the clinically appropriate time to activate the received updates based on specific factors tied to the operation of the infusion pump, such as the state of the infusion pump relative to the administration of medication.  These features emphasize the autonomy of individual infusion pumps to activate the update at a clinically appropriate time relative to their internal operation, irrespective of when the update is received.

51.     Claim 10 of the '414 patent recites:

10. The infusion pump of claim 1, wherein the computer-readable instructions, when executed by the processor, cause the infusion pump to:

determine the time based on a determination that the state of the infusion pump is before administration of a medication to the patient or after the administration of the medication to the patient.

**F.     The '703 patent**

52.     The '703 patent is entitled "Displaying Visual Elements On A Medical Device," and was duly and legally issued on January 21, 2025, by the United States Patent and Trademark Office.  BD owns all right, title, and interest in and to the '703 patent.  A true and correct copy of the '703 patent is attached as Exhibit F.

53.     The '703 patent relates to a novel infusion pump that has a multi-color display that displays visual elements according to visual profiles that are activated based on pump's treatment parameters using a rules-based selection process and an ambient light sensor that produces a signal

used to adjust the pump's brightness.  The claimed solution enabled infusion pumps to harness the capabilities of multi-color displays at a time when many infusion pumps used monochrome and/or alphanumeric displays.  For example, the claimed solution allows different visual profiles (e.g., different ways of structuring and presenting specific infusion-related information to the user) to be used depending on the treatment being administered by the infusion pump and a different brightness to be used depending on the ambient light in the vicinity of the pump (e.g., a dark operating room environment versus a bright neonatal care environment).  These features cause the pump to operate the multi-color display in a manner that reduces errors and improves patient care.

54.    Claim 1 of the '703 patent recites:

1. An infusion pump comprising:

a multi-color display configured to display a plurality of visual elements wherein at least two visual elements of the plurality of visual elements are associated with a function of the infusion pump;

an ambient light sensor;

a processor; and

a non-transitory memory storing executable instructions that, when executed by the processor, cause the infusion pump to:

determine a state of the infusion pump corresponding to an operating parameter associated with a treatment provided by the infusion pump;

determine, based on the state of the infusion pump, that a rule for a visual profile selection is satisfied;

activate, based on the rule for the visual profile selection, a visual profile of the infusion pump;

display, on the multi-color display of the infusion pump, a first visual element according to the visual profile;

receive a signal generated by the ambient light sensor; and

adjust a brightness of the infusion pump, based on the signal generated by the ambient light sensor.

55.    The '703 patent further relates to an infusion pump that, in addition to having the features described above, determines the visual profile for the multi-color display, using a rules-based process that maximizes the pump's limited display space to provide an interface with the information needed to convey clinically significant information in an easy-to-use format.  These features highlight how the claimed solution can use the capabilities of the multi-color display to more effectively convey specific information about the pump (e.g., the care area where the pump is operating, the pump's power state, or its drug library) than existing solutions.

56.    Claims 9, 10, 13, and 14 of the '703 patent recite:

9.  The infusion pump of claim 1, wherein the executable instructions, when executed by the processor, cause the infusion pump to:  receive a user input designating a care area where the infusion pump will administer the treatment.

10.  The infusion pump of claim 1, wherein the executable instructions, when executed by the processor, cause the infusion pump to:

determine a power state of the infusion pump; and

display an additional visual element based on the power state of the infusion pump.

13.  The infusion pump of claim 1, wherein the executable instructions, when executed by the processor, cause the infusion pump to:

receive a user input identifying a care area;

determine, based on the care area, that an additional rule for the visual profile selection is satisfied;

activate, based on the additional rule for the visual profile selection, a visual profile of the infusion pump based on the care area; and

display, on the multi-color display of the infusion pump, a visual profile based on the care area associated with the infusion pump.

14.  The infusion pump of claim 1, wherein the executable instructions, when executed by the processor, cause the infusion pump to:

determine, based on a drug library, that a second rule for the visual profile selection is satisfied;

activate, based on the second rule for the visual profile selection, a visual profile of the infusion pump based on the drug library; and

display, on the multi-color display, the visual profile based on the drug library.

57.     The '703 patent further relates to an infusion pump that, in addition to having the features described above, has a backlight that is adjusted based on the signal from the ambient light sensor.  The use of a backlight in conjunction with the multi-color display provides further flexibility for the pump to display information in a variety of clinical environments in an effective manner that improves patient safety.

58.     Claim 15 of the '703 patent recites:

15. The infusion pump of claim 1, wherein the executable instructions, when executed by the processor, cause the infusion pump to: adjust a backlight of the infusion pump, based on the signal generated by the ambient light sensor.

## V.     BAXTER'S INFRINGEMENT OF THE ASSERTED PATENTS

59.     Baxter's Novum IQ Infusion Platform includes multiple types of infusion pumps and associated software products.  For example, Baxter currently sells and offers for sale in the United States, the Novum IQ LVP, which received FDA 510(k) clearance on March 29, 2024, and the Novum IQ Syringe Pump, which received FDA 510(k) clearance on August 30, 2022.  On information and belief, Baxter also currently sells and offers for sale in the United States the IQ Enterprise Connectivity Suite, which enables monitoring and management of Novum IQ pumps, the DeviceVue Asset Tracking Application, which enables clinicians to locate Novum IQ pumps within a medical facility, and the Dose IQ Safety Software, which enables drug libraries to be wirelessly deployed to Novum IQ pumps.  The "Accused Infusion Systems" referred to below include the Baxter products described above, including the Baxter Novum IQ Infusion Platform.

60.     On information and belief, Baxter has imported and will import the Novum IQ LVP and the Novum IQ Syringe Pump into the United States.  Baxter also maintains a US website on which it advertises the Novum IQ Infusion Platform and through it distributes brochures and marketing materials for the Novum IQ LVP, the Novum IQ Syringe Pump, and the IQ Enterprise Connectivity Suite.[2]

61.     On information and belief, the Novum IQ LVP and the Novum IQ Syringe Pump are substantially the same in the aspects discussed below.  Unless otherwise specified, references to the Novum IQ pumps include both types of pumps.

     *1.     "On-screen barcodes"*

62.     The Accused Infusion Systems include an on-screen scannable tag or barcode that infringes one or more claims of the '180 and '058 patents.  For example, the Novum IQ Infusion Platform Site describes the Novum IQ pumps as having "[o]n-screen barcodes with scan prompts ensure that pumps are correctly identified, helping to provide safety and efficiency during auto-programming and drive auto-programming compliance."   Novum IQ Launch Site includes a photograph of a Novum IQ pump depicting the on-screen barcode and scan prompts.

---

[2] *See* https://ushospitalproducts.baxter.com/novum-iq-infusion-platform ("Novum IQ Infusion Platform Site"); https://www.baxterglobal.com/LP_US_NovumIQ_LVP_Launch ("Novum IQ Launch Site"); https://ushospitalproducts.baxter.com/sites/g/files/ebysai2186/files/2024-03/IQ_Enterprise_Brochure_0.pdf ("IQ Enterprise Brochure").



Novum IQ Launch Site.

63.    The Novum IQ pumps are communicatively coupled with a server in a manner that infringes one or more claims of the '180 patent.  For example, Novum IQ Infusion Platform Site describes the Novum IQ pumps as "[e]nabl[ing] seamless interoperability between your infusion pumps and your EMR system, supporting a broad range of pump programming workflows." Novum IQ Launch Site explains that these interoperability features are enabled by the on-screen barcode, stating that "[v]isibility supports interoperability: A clear and highly visible exclusive, onscreen barcode supports more integrated infusion as part of the auto-programming workflow."

2.    *"Infusion Story"*

64.    The Accused Infusion Systems provide an interactive timeline of infusion events that infringes one or more claims of the '880 patent.  For example, IQ Enterprise Brochure describes a feature called "Infusion Story" that provides an interactive "chronological depiction" of infusion events.  IQ Enterprise Brochure at 6.  Infusion Story's chronological depiction "enables data drilldown into every individual infusion on every individual pump, illustrating every limit alert encountered, every start and stop time, and every rate change." *Id*.  On information and belief, the IQ Enterprise Connectivity Suite causes the chronological depiction to be displayed on a

mobile communication device within a healthcare environment, as shown, in the photograph below.



https://infusiontechnology.baxter.ca/integrated-clinical-software-solutions/iq-enterprise-connectivity-suite (Baxter's Canadian website for IQ Enterprise).

65.    The Accused Infusion Systems also distribute computational workloads among the infusion pump, remote device, and mobile communication device in a manner that infringes one or more claims of the '880 patent.  For example, IQ Enterprise Brochure explains that data is processed using a remote device (e.g., a server), and a user interface is provided on a mobile communication device.  IQ Enterprise Brochure at 2 ("The IQ Enterprise Connectivity Suite is a scalable all-in-one server, integration engine and software application platform designed for the Novum IQ Infusion Platform to simplify infusion system connectivity"); *id*. at 2-10 (showing IQ Enterprise user interfaces on various mobile communication devices).  IQ Enterprise Brochure

highlights how this configuration offers "scalability" and can accommodate deployments "from the smallest hospital to the largest enterprise." *Id.* at 4.

        *3.*    *"Over-the-air updates"*

66.    The Accused Infusion Systems receive and activate configuration information from a remote server in a manner that infringes one or more claims of the '868 and '414 patents.  For example, Novum IQ Launch Site states that the Novum IQ pumps support "over-the-air firmware and drug library updates to allow pumps to stay on the floor and ensure nurses have the most up-to-date drug library and software."  IQ Enterprise Brochure explains that this feature "[g]ives clinicians timely access to the latest infusion protocols and infusion administration safety limits" and "[s]aves time and enhances efficiency for biomedical engineers, who no longer have to take pumps off the floor for firmware updates."  IQ Enterprise Brochure at 5.  On information and belief, the Novum IQ pumps activate the received configuration information at clinically appropriate times.

        *4.*    *"Color LCD" Display and "Ambient Light Sensor"*

67.    The Accused Infusion Systems have a color LCD display with multiple visual profiles and an ambient light sensor to adjust the pump's brightness that infringe one or more claims of the '703 patent.  For example, the Novum IQ Infusion Platform's marketing website depicts the Novum IQ pump's multi-color display in different configurations (e.g., different colors and arrangements of visual elements) depending on the state of the pump.





https://www.baxterglobal.com/novum-iq-platform/.

68.    The Novum IQ Infusion Platform's marketing website further explains that the Novum IQ pump has an "Ambient Light Sensor" to "[a]utomatically adjust[] screen brightness to the room," as shown below.



https://www.baxterglobal.com/novum-iq-platform/.

69.    Claim charts showing how Baxter's Novum IQ Infusion Platform infringe exemplary claims of the Asserted Patents are attached hereto as Exhibits G–L.

**B.    Baxter's Knowledge of the Asserted Patents and of Its Infringement**

70.    On information and belief, Baxter has had knowledge of the Asserted Patents since at least the launch of the Accused Infusion Systems.  On information and belief, Baxter knew, reasonably should have known, and/or was willfully blind that the Accused Infusion Systems infringe one or more claims of the Asserted Patents.  Based on Baxter's knowledge of the Asserted Patents and how the Accused Infusion Systems operate, Baxter knew of, should have known of, and/or was willfully blind to its infringement of the Asserted Patents before and at least after this Complaint was filed.

71.    Baxter has not obtained a license to the Asserted Patents or otherwise obtained permission from BD to make, use, sell, offer to sell, or import the inventions claimed in the Asserted Patents.

72.    On information and belief, Baxter is a sophisticated company in the market of infusion pumps.  Baxter and BD are vigorous competitors in the infusion pump market.  On information and belief, Baxter is aware of the risk of infringement of BD's patents, including the

Asserted Patents.  In fact, the Accused Infusion Systems function in the same or substantially the same manner as the claimed inventions of the Asserted Patents.  *See, e.g.* Ex. G-L.

73.     On information and belief, Baxter monitors, investigates, and assesses BD products and patents, including for patent infringement risk assessment.  On information and belief, Baxter monitors, investigates, and assesses BD's patent portfolio as it relates to infusion pump systems.  On information and belief, Baxter monitors, investigates, and assesses BD's Alaris™ pump technology.

74.     Baxter and BD also have an extensive litigation history.  Baxter and BD companies have previously been adverse in multiple patent litigations, including patent litigation relating to infusion pumps.  On information and belief, Baxter became aware during these prior litigations that it needed licenses to the Asserted Patents, but did not obtain them.

75.     On information and belief, Baxter studied BD's patent portfolio during the prosecution of Baxter's patent applications.  For instance, multiple patent publication documents naming BD companies as the applicant and/or assignee, including CareFusion 303, Inc., have been cited on the face of multiple patent publication documents listing Baxter International Inc. as applicant and/or assignee.  Multiple patent publication documents naming BD companies as the applicant and/or assignee, including CareFusion 303, Inc., have been cited on the face of multiple patent publication documents listing Baxter Healthcare Corp. as applicant and/or assignee.  As one example, U.S. Patent No. 11,177,026 is listed on its face as assigned to Baxter International Inc. and Baxter Healthcare SA and cites U.S. Patent No. 9,053,520, the parent patent to the '180 patent and '058 patent.

76.     On information and belief, despite tracking BD, BD's patent portfolio, and Alaris™, Baxter has continued to knowingly infringe, or has been willfully blind to infringement

of, the Asserted Patents, including by continuing to make, use, import, promote, market, sell, and offer to sell the Accused Infusion Systems with knowledge of their infringement, and by continuing to instruct the use of the Accused Infusion Systems in a way that infringes the Asserted Patents with knowledge that such instructions would lead to infringement of the Asserted Patents.

77.    Baxter's knowledge of the Asserted Patents and its infringement of those patents is further shown in Baxter's filings with government regulators during the development of the Accused Infusion Systems and after their launch.  For example, on information and belief, Baxter's filings with the United States Securities and Exchange Commission ("SEC") from before and after the launch of the Accused Infusion Systems admit that patent litigations could result in Baxter having to make "significant royalty or other payments" and could "result in injunctions that can prevent the sale of products."  *See, e.g.*, Baxter International Inc., 2024 Annual Report (Form 10-K) (Feb. 21, 2025) at 5.  Baxter explained it must "keep pace with changing consumer preferences and needs or advances in technology."  *Id*. at 9.  Baxter acknowledged its financial performance could suffer if Baxter's "competitors develop more effective or affordable products or achieve earlier patent protection or product commercialization than" Baxter.  *Id*. at 16.  Despite these statements, Baxter launched the Accused Infusion Systems without licenses or permission to use the Asserted Patents.

78.    Baxter is further aware of the Asserted Patents and of Baxter's infringement at least by the date of filing of this Complaint.  Since the filing of this Complaint, Baxter has continued to infringe the Asserted Patents, including by continuing to make, use, import, promote, market, sell, and offer to sell the Accused Infusion Systems with knowledge of its infringement, and by continuing to instruct the use of the Accused Infusion Systems in a way that infringes the Asserted Patents with knowledge that such instructions would lead to infringement of the Asserted Patents.

Since the filing of this Complaint, Baxter has continued to infringe the Asserted Patents without seeking or obtaining a license to the Asserted Patents.

### VI.    COUNT I: Infringement of U.S. Patent No. 11,289,180

79.    BD hereby incorporates by reference the foregoing paragraphs 1-78.

80.    Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '180 patent.

81.    Baxter infringes the '180 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim chart detailing Baxter's infringement of one or more claims of the '180 patent is attached as Exhibit G.

82.    Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '180 patent.  Baxter knowingly and intentionally induces third parties to infringe the '180 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '180 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '180 patent.  *See* Ex. G.

83.    Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '180 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused

Infusion Systems are especially made or adapted to infringe the '180 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

84.     On information and belief, Baxter has had knowledge of the '180 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '180 patent.

85.     Baxter's infringement of the '180 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

86.     Baxter has committed and will commit these acts of infringement without license or authorization.

**VII.    COUNT II: Infringement of U.S. Patent No. 11,901,058**

87.     BD hereby incorporates by reference the foregoing paragraphs 1-78.

88.     Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '058 patent.

89.     Baxter infringes the '058 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim

chart detailing Baxter's infringement of one or more claims of the '058 patent is attached as Exhibit H.

90.     Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '058 patent.  Baxter knowingly and intentionally induces third parties to infringe the '058 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '058 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '058 patent.  *See* Ex. H.

91.     Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '058 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused Infusion Systems are especially made or adapted to infringe the '058 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

92.     On information and belief, Baxter has had knowledge of the '058 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '058 patent.

93.     Baxter's infringement of the '058 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

94.     Baxter has committed and will commit these acts of infringement without license or authorization.

## VIII.   COUNT III: Infringement of U.S. Patent No. 11,324,880

95.     BD hereby incorporates by reference the foregoing paragraphs 1-78.

96.     Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '880 patent.

97.     Baxter infringes the '880 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim chart detailing Baxter's infringement of one or more claims of the '880 patent is attached as Exhibit I.

98.     Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '880 patent.  Baxter knowingly and intentionally induces third parties to infringe the '880 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '880 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '880 patent. *See* Ex. I.

99.     Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '880 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused

Infusion Systems are especially made or adapted to infringe the '880 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

100.    On information and belief, Baxter has had knowledge of the '880 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '880 patent.

101.    Baxter's infringement of the '880 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

102.    Baxter has committed and will commit these acts of infringement without license or authorization.

### IX.    COUNT IV: Infringement of U.S. Patent No. 12,278,868

103.    BD hereby incorporates by reference the foregoing paragraphs 1-78.

104.    Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '868 patent.

105.    Baxter infringes the '868 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim

chart detailing Baxter's infringement of one or more claims of the '868 patent is attached as Exhibit J.

106.    Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '868 patent.  Baxter knowingly and intentionally induces third parties to infringe the '868 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '868 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '868 patent.  *See* Ex. J.

107.    Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '868 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused Infusion Systems are especially made or adapted to infringe the '868 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

108.    On information and belief, Baxter has had knowledge of the '868 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '868 patent.

109.    Baxter's infringement of the '868 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

110.    Baxter has committed and will commit these acts of infringement without license or authorization.

## X.    COUNT V: Infringement of U.S. Patent No. 12,028,414

111.    BD hereby incorporates by reference the foregoing paragraphs 1-78.

112.    Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '414 patent.

113.    Baxter infringes the '414 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim chart detailing Baxter's infringement of one or more claims of the '414 patent is attached as Exhibit K.

114.    Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '414 patent.  Baxter knowingly and intentionally induces third parties to infringe the '414 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '414 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '414 patent. *See* Ex. K.

115.    Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '414 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused

Infusion Systems are especially made or adapted to infringe the '414 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

116.    On information and belief, Baxter has had knowledge of the '414 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '414 patent.

117.    Baxter's infringement of the '414 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

118.    Baxter has committed and will commit these acts of infringement without license or authorization.

### XI.    COUNT VI: Infringement of U.S. Patent No. 12,205,703

119.    BD hereby incorporates by reference the foregoing paragraphs 1-78.

120.    Baxter has engaged in the commercial manufacture, use, offer for sale, or sale of the Accused Infusion Systems in the United States, and/or the importation of Accused Infusion Systems into the United States.  Pursuant to 35 U.S.C. § 271, these acts constitute direct and indirect infringement, either literally or under the doctrine of equivalents, of one or more claims of the '703 patent.

121.    Baxter infringes the '703 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States and by actively inducing and contributing to infringement by others, in violation of 35 U.S.C. § 271 (a)-(c) and/or (f).  A claim

chart detailing Baxter's infringement of one or more claims of the '703 patent is attached as Exhibit L.

122.    Baxter also has induced infringement, and continues to induce infringement, of one or more claims of the '703 patent.  Baxter knowingly and intentionally induces third parties to infringe the '703 patent, including health care providers, by selling or otherwise supplying the Accused Infusion Systems with the knowledge and intent that third parties will use the Accused Infusion Systems to infringe the '703 patent.  Baxter knowingly and intentionally provides third parties with instructions on how to use the Accused Infusion Systems in a way that infringes the '703 patent.  *See* Ex. L.

123.    Baxter also has contributed and will contribute to the infringement by third parties of one or more claims of the '703 patent by making, using, offering to sell, selling, and/or importing the Accused Infusion Systems in or into the United States, knowing that the Accused Infusion Systems are especially made or adapted to infringe the '703 patent and knowing that the Accused Infusion Systems are not a staple of commerce suitable for non-infringing use.

124.    On information and belief, Baxter has had knowledge of the '703 patent since at least the launch of the Accused Infusion Systems.  Baxter knows that its manufacturing, using, selling, offering to sell, and/or importing of the Accused Infusion Systems does and will constitute infringement of the '703 patent.

125.    Baxter's infringement of the '703 patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Infusion Systems because, despite an objectively high likelihood that Baxter's actions do and will constitute infringement of a valid patent, Baxter continues to manufacture, use, sell, offer to sell, and/or import the Accused Infusion Systems in or into the United States.

126.    Baxter has committed and will commit these acts of infringement without license or authorization.

## XII.    DEMAND FOR JURY TRIAL

127.    Pursuant to Federal Rule of Civil Procedure 38(b), BD demands a trial by jury on all issues so triable.

## XIII.    PRAYER FOR RELIEF

WHEREFORE, BD seeks a judgment awarding the following relief:

128.    Adjudge and enter judgment that Baxter directly or indirectly infringes, literally or under the doctrine of equivalents, at least one claim of each of the Asserted Patents under 35 U.S.C. § 271.

129.    Award BD damages adequate to compensate it for Baxter's acts of patent infringement, together with prejudgment and post-judgment interest under 35 U.S.C. §§ 154, 284 and other permitted costs, expenses, and disbursements.

130.    Declare that Baxter's infringement is willful and award to BD all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of compensatory damages found.

131.    Preliminarily and permanently enjoin Baxter, all persons acting in concert or participation with Baxter, all parent and subsidiary corporations and affiliates, and their assigns and successors in interest from continuing acts of infringement of the Asserted Patents.

132.    Declare that this case is exceptional and award BD costs and recoverable attorneys' fees incurred in having to defend this action, pursuant to 35 U.S.C. § 285 and as otherwise allowed.

133.    Provide all other equitable and legal relief the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Omar A. Khan
Christopher R. Noyes
WILMER CUTLER PICKERING HALE
   AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Heather Petruzzi
Alexis Cohen
R. Gregory Israelsen
Bobby Hampton
Brian Lambson
WILMER CUTLER PICKERING HALE
   AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

May 12, 2025

Brian P. Egan (#6227)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiffs*