IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY; CAREFUSION 303, INC.; CAREFUSION MANUFACTURING, LLC; CAREFUSION SOLUTIONS, LLC; and BD SWITZERLAND S.À.R.L., <br><br> Plaintiffs, <br><br> v. <br><br> BAXTER INTERNATIONAL INC. and BAXTER HEALTHCARE CORPORATION, <br><br> Defendants. | Civil Action No. 25-591-CFC |

## **MEMORANDUM ORDER**

In May 2025, Plaintiffs (collectively, BD) sued Defendants (collectively, Baxter) for alleged infringement of six patents: U.S. Patent Nos. 11,289,180 (the #180 patent), 11,901,058 (the #058 patent), 11,324,880 (the #880 patent), 12,278,868 (the #868 patent), 12,028,414 (the #414 patent), and 12,205,703 (the #703 patent). D.I. 1. From July through August, Baxter requested *ex parte* reexaminations of each of the asserted patents, and the United States Patent and Trademark Office (PTO) instituted all but one. D.I. 58-8; D.I. 58-9; D.I. 58-10;

D.I. 58-11; D.I 48-1 at 61, [hereinafter "EPR Orders"]; D.I. 58-12. Baxter has petitioned the PTO for review of the denial. D.I. 48-1 at 44.

Pending before me is Baxter's Motion to Stay Pending *Ex Parte* Reexamination, filed in October 2025. D.I. 46. BD opposes the motion. D.I. 57.

Whether or not to stay litigation is a matter left to the Court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1998). In exercising this discretion, the Court must weigh the competing interests of the parties and attempt to maintain an even balance. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The factors courts typically consider in deciding how to exercise this discretion include: (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See, e.g.*, *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *1 (D. Del. Apr. 9, 2015); *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010). When deciding whether to stay a case pending post-grant review proceedings before the PTO, courts may also weigh "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." *TTI Consumer Power Tools, Inc. v. Lowe's Home Ctrs. LLC*, 2022 WL 16739812, at *1 (D. Del. Nov. 7, 2022) (weighing this factor when deciding whether to stay a case pending *ex parte* reexamination); *see also TC*

*Tech. LLC v. Sprint Corp.*, 2021 WL 4521045, at *2 (D. Del. Oct. 4, 2021) (same); *Brit. Telecomms. PLC v. IAC/InterActiveCorp.*, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019) (weighing this factor when deciding whether to stay a case pending *inter partes* review).

Three factors weigh in favor of staying this case, while one is neutral. First, a stay could very well simplify the issues in this case. The pending reexaminations cover most, but not all, of the asserted claims of the patents-in-suit.[1] *Compare* D.I. 58-21 at 3 (BD's infringement contentions) *with* EPR Orders. Following reexaminations requested by third parties, about eighty percent of challenged claims are either cancelled or amended. D.I. 48-1 at 10; *see also TC Tech.*, 2021 WL 4521045, at *6 (discussing similar rate in prior years). It follows that Defendants' requests for *ex parte* reexamination are likely to result in at least some cancelled or modified claims. If even some of the asserted claims are cancelled or "modified, this could render much of the parties' and Court's resources wasted—if, for instance, the Court construes claim terms that are subsequently eliminated by amendment in the reexamination." *Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010); *see also Monitoring v. Get-Grin Inc.*, 2024 WL

---

[1] It is undisputed that the many of the claims not subject to reexamination were asserted after BD's original deadline to oppose the stay. *Compare* DI. 57 at 12 *with* D.I. 59 at 6–7; *see also* D.I. 58-21 at 3 (BD's infringement contentions, October 22, 2025).

3

1603403, at *6 (D. Del. Apr. 9, 2024) (Bryson, J.) ("[E]ven if reexamination is not instituted with respect to the [last] patent, any decisions cancelling claims from the [other] patents at issue will doubtlessly simplify the case before this court.").

Second, the case is in its early stages.[2] The trial is not until July 2027, and fact discovery will close in September 2026. D.I. 27. "In short, this litigation's most burdensome parts have yet to occur. . . . Granting a stay at this early stage will advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their resources addressing invalid claims." *TTI Consumer Power Tools*, 2022 WL 16739812, at *2.

Third, a stay will neither unduly prejudice nor provide a clear tactical disadvantage to BD. "In evaluating whether undue prejudice or a clear tactical advantage exists, courts in this district typically examine four factors: (1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *TC Tech.*, 2021 WL 4521045, at *8. After this lawsuit was filed in May 2025, Baxter requested all six reexaminations by July, and the PTO granted the pending five in July and August. *See* EPR Orders. Baxter then moved for a stay in October, less than five

---

[2] BD attempts to distinguish stays granted in cases at later stages by their proportions of asserted claims subject to reexamination or the relationships of the parties. *See* D.I. 57 at 14. But these concerns pertain to the first and third factors, respectively.

months after this lawsuit began. D.I. 46. Because Baxter moved quickly for both the reexaminations and the stay, and the PTO has already initiated the reexaminations, these three subfactors favor a stay.

The remaining question is whether BD and Baxter compete such that a stay would cause undue prejudice. "To determine whether parties are direct competitors, this Court has looked to actual market participation and to whether there has been a request for preliminary injunction." *Ever Win Intern. Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 510 (D. Del. 2012). "Courts are hesitant to grant a stay in a matter where the parties are direct competitors. . . . The presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the plaintiff." *Neste Oil OYJ v. Dynamic Fuels, LLC*, 2013 WL 3353984, at *3 (D. Del. July 2, 2013); *see also Nat. Alternatives Intl., Inc. v. DNP Intl. Co., Inc.*, 2014 WL 12712513, at *1 n.3 (D. Del. June 4, 2014) (finding competition in the same product "does not automatically establish undue prejudice because there are other active competitors in the same marketplace"); *Air Vent, Inc. v. Owens Corning Corp.*, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012) (same); *cf. Belden Techs. Inc. v. Super. Essex Commc'ns LP*, 802 F. Supp. 2d 555, 576 (D. Del. 2011) (denying permanent injunction when parties "are not the only competitors" in the market).

BD paints the parties as "fierce competitors," D.I. 57 at 15, while Baxter acknowledges their competition but asserts they are in a "crowded" market that would limit any prejudice to BD from its continued participation. D.I. 47 at 15. Baxter's exhibit, a report on infusion therapy market data, names BD the leader and Baxter a third-place competitor. D.I. 48-1 at 2–6. BD notes the same exhibit reports "a few dominant players" in the market. D.I. 57 at 16 n.5 (quoting D.I. 48-1 at 3). The facts presented here do not support finding undue prejudice. *See Nat. Alternatives Intl., Inc.*, 2014 WL 12712513, at *1 n.3.

Without a clear picture of the market competition, I turn to BD's declining to seek a preliminary injunction.

> Of course, whether the patentee will be *unduly prejudiced* by a stay . . . , like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim. A stay will not diminish the monetary damages to which [the patentee] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy."

*VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) (emphasis in original). While BD indicates that they will seek a permanent injunction, and there are plausible reasons for not seeking preliminary relief, "the fact that it was not worth the expense to ask for this relief contradicts [BD]'s assertion that it needs injunctive relief as soon as possible." *VirtualAgility*, 759 F.3d at 1319. BD thus fails to demonstrate that it would be unduly prejudiced by staying

this case until the completion of the reexaminations. Accordingly, this factor is neutral.

Fourth, for the reasons discussed above with respect to the first and second factors, staying the case pending *ex parte* reexaminations will reduce the burdens on the Court.

NOW THEREFORE, at Wilmington on this Eighteenth Day of December in 2025, Plaintiff's Motion to Stay (D.I. 46) is GRANTED.

*[signature]*
CHIEF JUDGE